Devin A. McRae, State Bar Number 223239
  dmcrae@earlysullivan.com
Peter Scott, State Bar Number 247786
  pscott@earlysullivan.com
Brett G. Moore, State Bar Number 311637
  bmoore@earlysullivan.com
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for Plaintiffs
ROBERT SPECTOR, KANDIS SPECTOR,
and SAMANTHA SPECTOR

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SPECTOR, an individual; KANDIS SPECTOR, an individual; and SAMANTHA SPECTOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY, a Texas corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3. **FINANCIAL ELDER ABUSE**<br><br>**DEMAND FOR JURY TRIAL** |

5826695.2

**COMPLAINT**

Plaintiffs Robert Spector, Kandis Spector, and Samantha Spector (collectively, "Plaintiffs") bring this action against Defendants USAA Casualty Insurance Company ("USAA") and Does 1 through 10, inclusive (collectively, "Defendants"), and in support thereof allege as follows:

## I. PARTIES

1. At all relevant times, Plaintiff Robert Spector was a resident of the State of California with a primary residence in the County of Los Angeles. Dr. Spector is 82 years of age.

2. At all relevant times, Plaintiff Kandis Spector was a resident of the State of California with a primary residence in the County of Los Angeles. Ms. Spector is 77 years of age.

3. At all relevant times, Plaintiff Samantha Spector was a resident of the State of California with a primary residence in the County of Los Angeles.

4. On information and belief, Defendant USAA Casualty Insurance Company is, and at all relevant times was, a corporation organized under the laws of the State of Texas and has its principal place of business in the State of Texas.

5. The true names and capacities, whether individual, corporate, associate or other, of Does 1-10 are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs allege that each Doe defendant is legally responsible in some manner for the events and happenings referred to herein and will ask leave of this court to insert their true names and capacities when they become known.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of the State of California and diversity exists because USAA is a citizen of Texas. The amount in controversy exceeds $75,000. This case involves persons and entities with sufficient contacts with California to make proper the exercise of personal jurisdiction over them.

7. Venue is proper in this Court. A substantial part of the acts or omissions giving rise to the claims alleged occurred in Los Angeles County, California.

## III. FACTUAL ALLEGATIONS

### A. The Property and the Loss Event

8. Plaintiffs are the owners of the condominium property known as 10560 Wilshire Blvd., Apt. 1402, Los Angeles, California (the "Property"). The Property has a spacious floor plan with wall-to-wall windows and two exterior balconies allowing for a generous and iconic views of Los Angeles. It has 2 bedrooms, 3 bathrooms, and approximately 2,200 square feet of interior space. The interior of the Property has ultra-high end finishings, including floor to ceiling mirrors along the foyer, hand finished venetian plaster walls, marble flooring and custom, hand-made cabinetry in the kitchen.

9. The Property is in one of the most prestigious and well-appointed buildings along the Wilshire corridor. The building has an on-site exercise room, swimming pool, and spa, and also provides services in the form of 24-hour security, a front desk concierge, and valet parking.

10. Plaintiffs purchased a homeowners insurance policy (No. USAA 001088018-94A) issued and underwritten by USAA for the period of May 4, 2025 through May 4, 2026, and covering the Property (the "Policy"). The policy covered numerous perils, including without limitation, water damage. The Policy provided coverage limits of at least $438,000 for the dwelling (Coverage A), $444,000 for personal property (Coverage C), and $177,600 for loss of use (Coverage D).

11. Plaintiffs faithfully paid all policy premiums to USAA and the Policy was in effect at the time of the loss described below.

12. On or about May 30, 2025, the Property sustained damage from a water leak on the east facing balcony of the unit. As a result of the leak, a large volume of water had leaked into the interior of the Property flooding the living room,

hallways, bathroom and kitchen. Upon information and belief, building management was alerted to the leak during the evening of May 30, 2025, by unit owners directly beneath the Property and the building engineer was able to shut off water to the source of the leak to prevent further flooding. The Spectors were travelling overseas when this water damage occurred and were unable to immediately return to the Property to mitigate the damage.

13. The water damage to the Property was extensive. While the standing water had drained through the floors, the interior of the Property was completely soaked and heavy moisture remained in the floors, sub-floors and walls. In order to effectively mitigate the water damage, the flooring and sub-flooring in the living room, kitchen, foyer, hallways and bathrooms had to be pulled up to allow the moisture to be dried. Further, drywall and plaster cuts had to be made to the bottom of the walls where moisture had infiltrated the walls. In the kitchen, water had intruded underneath and into the cabinetry and the walls abutting, requiring the cabinetry to be pulled out to dry the affected areas.

14. The furniture, artwork and personal property in the affected areas was damaged and water logged and had to be packed out and stored.

15. As USAA has acknowledged, the damage rendered the Property unusable and uninhabitable. Prior to the loss event, the Property was Dr. Spector and Kandis Spector's full-time residence.

16. Plaintiffs promptly tendered a claim to USAA, which was accepted without a reservation of rights (the "Claim"). However, USAAs' bad faith handling of the Claim started almost immediately, with USAA's clear goal to be to minimize its payments under the Policy, regardless of the actual losses incurred by the Spectors.

//
//
//



### B. USAA's Breaches of the Policy and Bad Faith Adjustment of the Claim

17. With respect to Coverage A – Dwelling, USAA inspected the loss on or about June 4, 2025. Due to the limited additional living expenses coverage, Plaintiffs desired to commence repairs to the Property as soon as possible and repeatedly inquired with USAA as to when they could expect to receive funds from USAA to complete these repairs. It was not until August 7, 2025 – over two months after the loss event, that USAA made its first payment in this regard. However, despite the open, obvious and extensive damage to the interior the Property – which was entirely gutted, save for two bedrooms – USAA generated an extremely limited scope and cost of repair, issuing an estimate of just $38,317, to purportedly cover the entire cost of all necessary repairs. This amount was nowhere near sufficient to return the Property to its pre-loss condition, and neglected major items of required repair and severely underestimated the cost of the items it actually did include.

18. Recognizing that USAA would not develop an accurate or reasonable repair estimate on its own, the Spectors were forced to retain their own professional to develop a repair estimate based on a real world bid by a contractor and design professional that was actually ready, willing and able to perform the work. This estimate reflected a true cost to repair and return the Property to its pre-loss condition of $568,362.51 – an amount which exceeded the available policy limits for Coverage A. The Spectors tendered this estimate to USAA on August 27, 2025.

19. In response, USAA revised and repriced its original estimate and issued a revised repair estimate of $56,516.73 – a mere $18,000 increase and still only approximately 10% of the true cost to repair the home.

20. Upon information and belief, USAA has an established claims handling policy and procedure of "stair stepping" its repair estimates, by initially offering lowball estimates, and then incrementally increasing the estimate when the insured challenges the estimate, until the insured gets exhausted from the process or

runs out of additional living expenses coverage and is effectively forced to accept USAA's inadequate repair estimate.

21.  In light of the rapidly expiring additional living expenses coverage and the extended length of time that repairs on the Property will take,[1] the Spectors do not have the luxury of engaging in USAA's "stair stepping" game (which has gone on for five months already). They had no choice but to file this action to obtain the Policy benefits to which they are entitled on Coverage A.

### C.  **Coverage D – Additional Living Expenses**

22.  USAA's bad faith claims handling carried over to Coverage D – Additional Living Expenses. Upon information and belief, USAA utilizes Coverage D and its handling of the insureds' additional living expenses coverage as a tool and cudgel to exert pressure on its insureds to accept lowball dwelling repair estimates. As relevant to the instant action, after learning that they would need to move out of the Property due to its uninhabitability, the Spectors were able to secure a heavily discounted rate at a local hotel. USAA affirmatively approved this lodging and the Spectors moved into their new room.

23.  However, after a month of living at that hotel, on July 29, 2025, USAA notified the Spectors that it would no longer pay for them to stay at this hotel and the Spectors would have to vacate and find new arrangements within 48 hours. USAA further stated that it would only approve a monthly rental amount at a depressed rate that would be insufficient to rent a property of like kind and quality to the insured dwelling.

---

[1] Because the Property is located in a condominium building, the repairs will take significantly longer than they would on a stand-alone residential home. The condominium building has limited hours during which construction activity can take place, materials cannot be stored and staged at the building, and extensive building elevator and hallway protection must be installed and removed each day, further reducing the already limited time during which construction can take place at the building.



24. To support its whipsaw (approve one day, withdraw the next) adjustment of the Spectors' additional living expenses, USAA provided three hotels as purportedly comparable to the Spectors' standard of living. The specific hotel properties USAA used as a "comp," however, were approximately a quarter the size of the insured dwelling, with one bedroom and no kitchen, and with two of them located directly next to LAX Airport (40 minutes away from the Property) and one of them at a hotel that is currently undergoing extensive remediation and which is an active construction zone. Suffice it to say, none of them were suitable to maintain the Spectors standard of living – a standard of particular and critical importance to the Spectors because of their advanced age and documented health conditions (all of which was known to USAA).

25. USAA's refusal to reimburse the Spectors for hotel expenses at an appropriate level is particularly egregious within the context of this claim. The extent of the damage, the high-end custom finishes that will need repair or replacing, and labor issues caused by the recent Palisades and Altadena fires, will almost certainly cause the restoration of the Property to take in excess of 12 months. Even at USAA's unrealistic unilaterally established monthly ALE cap, the Spectors' ALE expenses will almost certainly eclipse the policy limits under Coverage D. USAA is effectively using the specter of rapidly extinguishing additional living expenses coverage, excessive delays in adjusting the Coverage A portion of the claim, and the fact that repairs on the Property will take a very long time to complete, in order to force the Spectors' into accepting a lowball Coverage A settlement, just so that they can commence repairs on their Property.

26. Plaintiffs are further investigating and documenting the damage sustained to their personal property under Coverage C, and will tender these losses as soon as this information is tabulated.

27. Plaintiffs are informed and believe that USAA has established internal claims handling guidelines utilized companywide in connection with losses

5826695.2

7

COMPLAINT

of the variety Plaintiffs sustained. These claims handling guidelines include USAA's claims adjusters taking initial, hardline and unreasonable coverage positions, switching positions mid-claim, frequently switching adjusters mid-claim, and delaying the payment of policy benefits and communications with the insured, forcing the insured to retain experts, independent adjusters and/or attorneys out of the insured's own pocket to challenge USAA's unreasonable positions.

28. Plaintiffs are further informed and believe that USAA ties its performance reviews and compensation packages for employees, adjusters, managers and agents, in part, to the amount such representatives pay on claims. Therefore, when adjusters assigned to Plaintiffs' claim maintain lower claim pay-outs, and greater coverage denials, such persons are rewarded by the carrier. Such policy violates law and California insurance regulations.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract Against USAA and DOES 1-10)

29. Plaintiffs incorporate the foregoing paragraphs as though set forth in full herein.

30. At all material times Plaintiffs were the owners or beneficial owners of the Property insured by the Policy.

31. At all material times herein, Plaintiffs were insured by USAA under the Policy, which was in effect at all relevant times including on the dates of loss. The Policy is not attached to this Complaint due to privacy considerations, but is already in the possession, custody and control of USAA and will be produced by Plaintiffs in the discovery process.

32. According to the Policy, USAA agreed to provide coverage to Plaintiffs for loss or damage to the Property (including other structures), personal belongings contained therein as well as loss of use of the Property arising out of a covered loss.

33. Plaintiffs fulfilled all of their obligations under the Policy. Plaintiffs paid the premiums and performed or substantially performed the promises agreed to under the Policy, including promptly notifying USAA of the loss and preventing further loss to the best of their ability. In the alternative, any obligation or requirement that Plaintiffs may have failed to fulfill was immaterial to USAA's decision to issue the Policy and/or to USAA's claims handling conduct or denial of Policy benefits.

34. USAA breached its duties under the Policy by failing to provide the promised insurance coverage for the losses Plaintiffs sustained including, without limitation, the costs to repair the damage, for mitigation and clean-up costs, for damage to personal property and to fully compensate Plaintiffs for the loss of use of the Property. Plaintiffs have suffered damages as a direct and proximate result of USAA's breaches. In addition to being denied the Policy's benefits after a loss, USAA forced Plaintiffs to retain counsel and their own contractors and experts to obtain the Policy benefits owed by USAA, and Plaintiffs will almost certain incur additional living expenses in excess of the Policy limits as a result of USAA's failure to timely adjust and pay on the Claim. USAA maliciously disregarded the health and safety of the Spectors in denying said Policy benefits.

## SECOND CLAIM FOR RELIEF

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against USAA and DOES 1-10)**

35. Plaintiffs incorporate by reference the foregoing paragraphs as though set forth in full herein.

36. In every insurance policy there exists an implied duty of good faith and fair dealing that the insurance company will not do anything to injure the rights of the insured to receive the benefit of the policy. USAA breached its duty of good faith and fair dealing owed to Plaintiffs by, including but not limited to, engaging in the following conduct:



5826695.2

9
**COMPLAINT**

A. Unreasonably, and in bad faith, refusing to communicate with the insured concerning the claim;

B. Unreasonably, and in bad faith, placing its own financial interests ahead of its insured in violation of California's statutory, regulatory and common law;

C. Unreasonably, and in bad faith, failing to give at least as much consideration to the interests of its insured as it gave to its own interests;

D. Unreasonably and in bad faith failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy;

E. Unreasonably, and in bad faith, failing to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

F. Unreasonably, and in bad faith, delaying the investigation or payment of claims by requiring the insured to submit duplicative, onerous and/or unnecessary documentation concerning proof of loss submissions;

G. Unreasonably, and in bad faith, failing to implement standards for the prompt investigation and processing of claims;

H. Unreasonably, and in bad faith, denying coverage despite all uncontroverted evidence requiring coverage;

I. Unreasonably, and in bad faith, failing to retain competent independent experts to assist in the fair, reasonable, objective and prompt investigation of the claim;

J. Unreasonably, and in bad faith, withholding of payment of sums due and owing to the insured;

K. Unreasonably, and in bad faith, failing to investigate and process the insured's claim for benefits;

L. Unreasonably, and in bad faith, failing to objectively investigate the claim;

M. Unreasonably, and in bad faith failing, to thoroughly investigate the claim;

N. Unreasonably, and in bad faith, ignoring evidence supporting coverage;

O. Unreasonably, and in bad faith, failing to search diligently for evidence that supported payment of the claim; and

P. Unreasonably, and in bad faith, compelling Plaintiffs to institute litigation to recover amounts due under the Policy.

37. USAA's pattern of unfair practices constitutes institutional bad faith and evidences a conscious course of wrongful conduct that is firmly grounded in the established company policy of USAA.

38. Plaintiffs are informed and believe, and based thereon alleges, that USAA committed institutional bad faith by other acts and omissions of which they are presently unaware but will be shown according to proof at trial.

39. USAA's conduct was undertaken or approved by its officers or managing agents, who are and were responsible for claims supervision, operations, communications and decisions. This unreasonable conduct was undertaken on behalf of USAA.

40. USAA had advance knowledge of the actions and conduct of said individuals and the conduct was ratified, authorized and approved by USAA, including managing agents whose precise identifies are unknown to Plaintiffs at this time and therefore identified and designated as Does 1 through 10.

41. As a further proximate result of USAA's unreasonable conduct Plaintiffs were compelled to retain legal counsel to obtain benefits due under the Policy. USAA is liable to Plaintiffs for attorneys' fees, witness fees and costs of litigation reasonably necessary and incurred by them in order to obtain the Policy benefits.

42. USAA intended for its conduct to cause injury to Plaintiffs, and USAA engaged in despicable conduct carried out with a willful and conscious disregard of Plaintiffs' rights and/or subjected them to cruel and unjust hardship in conscious disregard of their rights. USAA's conduct constituted an intentional misrepresentation, deceit or concealment of material facts known to USAA with the intention of depriving Plaintiffs of property, legal rights and/or of causing other injury. USAA's conduct constitutes malice, oppression or fraud under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of USAA and to deter future similar conduct.

## THIRD CAUSE OF ACTION

**(Financial Elder Abuse by Robert Spector and Kandis Spector Against USAA and DOES 1-10)**

43. Plaintiffs incorporate by reference the foregoing paragraphs as though set forth in full herein.

44. At all relevant times herein, Plaintiffs Robert and Kandis Spector had an insurance policy for the Property through USAA, which was in effect on the date of the above described loss event.

45. Plaintiffs Robert and Kandis Spector have a property interest in the benefits due under the Policy.

46. Plaintiff Robert Spector and Plaintiff Kandis Spector are both "elders" as the term is defined in Welfare and Institutions Code § 15610.27, having both been beyond the age of 65 years old at the time USAA wrongfully withheld insurance benefits due to them.

47. Plaintiffs Robert and Kandis Spector had a vested personal property right to the money and benefits triggered under the Policy once the loss occurred.

48. USAA deprived Plaintiffs Robert and Kandis Spector of their contractual rights to the benefits due under the Policy.

49. USAA retained the Policy benefits with an intent to deprive Plaintiffs Robert and Kandis Spector of their Policy benefits, constituting financial abuse.

50. USAA additionally committed financial abuse when it:
   a. Took policy premiums from Plaintiffs Robert and Kandis Spector with no intent of fully paying benefits promised under the Policy;
   b. That by and through the insurance application process and internal company records and through correspondence exchanged in connection with the claim, USAA has and/or had knowledge that Plaintiffs Robert and Kandis Spector were elders and above the age of 65 years old;
   c. That USAA intentionally underpaid the loss; and
   d. That USAA wrongfully retained Policy benefits by delaying and denying payment to Plaintiffs Robert and Kandis Spector and did not pay what was due and owing to them for the covered water damage claim.

51. USAA knew or should have known that its conduct was directed to an elder such as Plaintiffs Robert and Kandis Spector and knew or should have known that its conduct was likely to be harmful to them.

52. USAA deliberately disregarded the high degree of probability that its conduct would injure Plaintiffs Robert and Kandis Spector.

53. USAA's conduct in the handling of the subject insurance claim caused Plaintiffs Robert and Kandis Spector to suffer distress. USAA's conduct was a substantial factor in causing their distress and harm, causing a loss of use of the Property, damage to the Property, serious inconvenience, and distress, compromising Plaintiffs Robert and Kandis Spector's health, welfare, and well-being.

54. USAA wrongfully retained and/or withheld payment of Policy benefits due to Plaintiffs Robert and Kandis Spector after their covered loss, with the intent to defraud Plaintiffs Robert and Kandis Spector, by not fully paying for their covered water loss event as required under the Policy.

55. As a direct and proximate result of USAA's wrongful conduct, Plaintiffs Robert and Kandis Spector suffered financial harm.

56. As a result of USAA's violation of Welfare and Institutions Code § 15610.30, Plaintiffs Robert and Kandis Spector are entitled to their attorneys' fees and costs pursuant to section 15657.5(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. All benefits due under the Policy;
2. An extension of the loss of use coverage to the date when repair and remediation of the loss sustained is actually completed;
3. General damages, including mental and emotional distress, in an amount to be determined at trial, upon a finding of bad faith;
4. Restitution to Plaintiffs;
5. Attorneys' fees incurred pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985) in recovering amounts due under the Policy;
6. Punitive damages, in an amount to be determined at trial;
7. Pre-judgment and post-judgment interest, as provided by law;
8. Costs of suit incurred herein; and
9. Such other and further relief as the court deems just and proper.

Dated: October 20, 2025

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: _____
Devin A. McRae
Peter Scott
Brett G. Moore
Attorneys for ROBERT SPECTOR, KANDIS SPECTOR, and SAMANTHA SPECTOR

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues triable by a jury in this action.

Dated: October 20, 2025

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: _____
Devin A. McRae
Peter Scott
Brett G. Moore
Attorneys for ROBERT SPECTOR, KANDIS SPECTOR, and SAMANTHA SPECTOR